UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                                    Bankruptcy No. 04-31605
                                                                                           Chapter 7
Ben Moffatt, a/k/a Timothy B. Moffatt,
and Sheila Moffatt, a/k/a/Sheila Reich,
d/b/a Wilder Quarterhorse Ranch,

                    Debtors.
_____/

**MEMORANDUM AND ORDER**

By motion filed November 29, 2004, the United States Trustee seeks dismissal of the Debtors' Chapter 7 case pursuant to 11 U.S.C. § 707(b), alleging the Debtors have the ability to repay a significant portion of their unsecured debt through future earnings. The Debtors resist dismissal. The matter was heard on March 22, 2005.

I. Findings of Fact

The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 13, 2004. On Schedule I the Debtors list monthly income of $3,082.47. They include a $100.00 income deduction for a voluntary contribution to a retirement plan and an $80.00 deduction for medical expenses. On Schedule J they list monthly expenses of $3,027.65, including, among other expenses, $161.00 for medical and dental expenses, $184.22 for a student loan, $28.50 for a Stafford loan, and $598.00 for stable rent and feed.

Craig Bumann, a certified public accountant and senior bankruptcy analyst for the United States Trustee's Office, testified as to the Debtors's income and expenses. Using Sheila Moffatt's September 2004 pay statement, Bumann calculated the Debtors' net monthly income by subtracting withholding allowances from Sheila Moffatt's gross wages. The withholding allowances for federal

and state income taxes Bumann used differ from those on Sheila Moffatt's pay statement. Using the standard deduction with no dependents, Bumann calculated the appropriate federal and state income tax withholding amounts are $332.00 and $68.00 respectively. The amounts currently withheld are $384.46 and $62.00 because, according to Sheila Moffat, the Debtors claim only one deduction when they actually have two deductions, resulting in an eventual tax refund that is applied toward Ben Moffatt's student loans. Sheila Moffatt's other withholding allowances are:

| | |
|---|---|
| FICA & Medicare | $ 304.88 |
| ING Dental Plan-Flex | $ 93.90 |
| Ameritas Vision Plan-Flex | $ 14.00 |
| Flex - Supplemental Life | $ 7.79 |
| Medical Spending Account | $ 80.00 |
| Supplemental Life | $ 24.00 |
| Dependent Life | $ 17.00 |
| Spouse Supplemental Life | $ 17.00 |
| United Way | $ 9.00 |

Bumann calculated the Debtors' total withholding allowances to be $952.08, leaving a net monthly income of $3,228.92. Bumann's calculation of the Debtors' monthly income does not include a voluntary contribution of $100.00 per month to a retirement plan. Sheila Moffatt's February 2005 pay statement indicates her dental flex contribution has increased to $103.20, her vision flex contribution has increased to $14.56, her medical spending account contribution has increased to $100.00, and her contribution to United Way has increased to $10.00.

Bumann calculated the Debtors' monthly disposable income using the Debtors' Schedule J and making certain adjustments. He reduced the amount of the Debtors' medical expenses by $80.00 because Sheila Moffatt has $80.00 deducted from her pay for the Medical Spending Account. He

2

excluded a $118.47 car payment because the Debtors testified at the creditors meeting that $556.40 was the remaining principal owing on the car and the loan should now be paid. Sheila Moffatt testified that the $118.47 payment is an interest payment only and the principal owing on the loan is still approximately $400.00-450.00. Bumann also excluded student loan payments of $212.72. Lastly, he reduced the expense for stable rent and feed because the Debtors testified at the creditors meeting that they sold two of the four horses they had when they filed their bankruptcy petition. The Debtors budgeted the stable and feed expense in their petition at $598.00. Bumann contacted stables in the Bismarck area, where the Debtors live, and the stable and feed expense for two horses would be $360.00. He therefore reduced the stable and feed expense by $238.00 ($598.00 minus $360.00). Bumann calculated the Debtors' monthly disposable income to be $850.46.

The United States Trustee argues the Debtors have understated their income on Schedule I because Sheila Moffatt's voluntary contribution to retirement fund should be disallowed and because excessive income taxes are currently withheld. The United States Trustee also argues several of the Debtors' scheduled expenses are not reasonably necessary for their support and maintenance. Specifically, the United States Trustee objects to the Debtors' inclusion of $212.72 per month for student loans in their expenses because these creditors may not be preferred over the Debtors' other unsecured creditors. He also objects to $161.00 per month for medical expenses because Sheila Moffatt has $80.00 deducted from her pay for her medical savings spending account. He also objects to $118.47 per month for a vehicle because as of October 14, 2004, only $556.40 remained owing so the loan should be paid off. The United States Trustee also objects to the Debtors' inclusion of $598.00 per month for stable rent and feed for their horses because Debtors' horse-breeding business is merely a hobby that the Debtors' unsecured creditors should not have to fund.

3

The Debtors argue the retirement contribution is required for a matching contribution by Sheila Moffatt's employer and was not changed for the bankruptcy and therefore should be allowed. They argue it is appropriate to include student loans as a monthly expense because they are not dischargeable in bankruptcy. They argue their medical expenses have increased since the bankruptcy filing, and the vehicle loan remains outstanding because payments have been made only toward the interest on the loan. Lastly, the Debtors deny that the horse-breeding business is a hobby and argue it is a genuine business effort.

## II.  Conclusions of Law

Section 707(b) provides that a bankruptcy court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b); . "Substantial abuse" is not a defined term, but in the Eighth Circuit, a Chapter 7 debtor's ability to fund a Chapter 13 plan is the primary factor to consider in determining whether granting relief would be substantial abuse under section 707(b). See Stuart v. Koch (In re Koch), 109 F.3d 1285, 1288 (8th Cir. 1997). A debtor's financial condition is evaluated under the posture of a hypothetical Chapter 13 proceeding. Id.

Chapter 13 of the Bankruptcy Code requires a meaningful and realistic budget, accompanied by the devotion of the debtor's disposable income to repay creditors through a Chapter 13 plan. See 11 U.S.C. § 1325(b); In re Bottelberghe, 253 B.R. 256, 263 (Bankr. D. Minn. 2000). "Disposable income" is defined as income received by the debtor which is not reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor and if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of the business. 11 U.S.C. § 1325(b)(2).

4

The Bankruptcy Code is not designed to allow debtors to retain an excessive lifestyle and discharge their obligations without modifying the lifestyle which created the financial problem. Some expenditures are clearly essential, or nondiscretionary, such as reasonable amounts budgeted for food, clothing and shelter. In re Downin, 284 B.R. 909, 912 (Bankr. N.D. Iowa 2002). Further, Chapter 13 debtors are allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses. Id. In short, although section 1325(b) contemplates some sacrifices or alteration in prepetition consumption levels by debtors, it allows them to sustain their basic needs and a reasonable lifestyle. See also In re Zaleski, 216 B.R. 425, 431 (Bankr. D.N.D. 1997) ("Section 1325(b) is to be applied in a way that allows a debtor to maintain a reasonable lifestyle while simultaneously insuring that he makes a serious effort to fulfill his obligations to pre-petition creditors by eliminating unnecessary or unreasonable expenses.")

There is a statutory presumption in favor of granting the debtor a discharge in a Chapter 7 proceeding. See 11 U.S.C. § 707(b) (permitting the filing of motions such as the one before the Court, stating: "There shall be a presumption in favor of granting the relief [i.e., discharge] requested by the debtor.)." The burden of proof is therefore on the United States Trustee to show the Debtors' case should be dismissed.

The Court agrees that the Debtors have understated their income on Schedule I. Income tax refunds and consistent over-withholdings are included in debtors' Chapter 13 income. See In re Zuehlke, 298 B.R. 610, 614 (Bankr. N.D. Iowa 2003). An analysis of projected disposable income necessarily considers the amount of the debtors' current income tax withholdings and whether any tax refund will be generated. Id.; see also In re Downin, 284 B.R. at 913. Further, voluntary

5

retirement contributions are not necessary for maintenance or support. See Anes v. Dehart (In re Anes), 195 F.3d 177, 180-81 (3rd Cir. 1999). Because funds that would otherwise be contributed to a retirement plan must be used to pay creditors under a Chapter 13 plan, such funds should be considered available to pay creditors for the purpose of the "substantial abuse" analysis. In re Regan, 269 B.R. 693, 696-97 (Bankr. W.D. Mo. 2001). Thus, the Court agrees with Bumann that the appropriate amount of federal and state income tax withholding amounts are $332.00 and $68.00 respectively, and Sheila Moffatt may not continue to voluntarily contribute $100.00 per month to her retirement. After adjusting Bumann's calculation of net income downward for postpetition increases in contributions to dental flex ($9.30), vision flex ($0.56), medical spending account ($20.00), and the United Way ($1.00), Sheila Moffatt's net monthly income is $3,188.76.[1]

The Court also agrees that several of the Debtors' scheduled expenses are not reasonably necessary for their support and maintenance. The United States Trustee rightfully points out that in a Chapter 13 case the $212.72 per month student loan would not be a monthly expense. Rather, payments would be made toward the student loan as an unsecured debt pro rata with other unsecured debt. Therefore, the $212.72 monthly expense would not exist until completion of the Debtors' Chapter 13 plan.

The United States Trustee also objects to $161.00 per month for medical expenses because Sheila Moffatt has money deducted from her pay check for her medical expenses. Each month Sheila Moffatt contributes $103.20 to her dental flex plan, $14.56 to her vision flex plan, and $100.00 to her medical spending account. The difficulty is that the Debtors did not testify at the hearing as to the amount of their monthly medical expenses, i.e., whether their medical expenses total $161.00 per

---

[1] $3,228.92 - $40.16 = $3,188.76.

6

month or are $161.00 above and beyond the amounts withheld from Sheila Moffatt's pay check. The Debtors' medical expenses should be included as an expense only to the extent that their expenses are in addition to the $217.73 deducted from Sheila Moffatt's pay check for medical, dental and vision expenses.

The United States Trustee also objects to a budgeted expense of $118.47 for a vehicle loan because as of October 14, 2004, only $556.40 remained owing. The United States Trustee asserts the loan should be paid off and the amount of the payment is now disposable income. Sheila Moffatt testified, however, that the $118.47 payment is merely an interest payment and the principal owing on the loan is still approximately $400.00-450.00.

The United States Trustee also objects to the Debtors' inclusion of $598.00 per month for stable rent and feed for their horses. Sheila Moffatt has full-time employment, Ben Moffatt is in treatment for substance abuse, and the horse operation has not turned a profit since the Debtors started it in 2002. The Court agrees the Debtors' horse operation is a hobby and an unreasonable expense that the Debtors' unsecured creditors should not have to fund.

The Court is not convinced that the Debtors are making "a serious effort to fulfill [their] obligations to pre-petition creditors by eliminating unnecessary or unreasonable expenses." See In re Zaleski, 216 B.R. at 431. By discontinuing a voluntary retirement contribution, having appropriate income taxes withheld, paying student loan creditors pro rata with other unsecured creditors during the life of a Chapter 13 plan, and eliminating the horse operating expenses, the Debtors would be capable of funding a Chapter 13 plan without hardship. The Court need not determine an exact amount of plan payments. It is sufficient to determine that enough disposable income exists upon which to fund a plan. The United States Trustee has overcome the presumption that the Debtors are

7

entitled to a discharge in Chapter 7, and has demonstrated that, when all factors are considered, the Debtors have an ability to repay a substantial portion of their debts. Consequently, granting Chapter 7 relief would constitute a substantial abuse of the Bankruptcy Code.

Accordingly, the United States Trustee's Motion to Dismiss for Substantial Abuse is GRANTED. The Chapter 7 case of Debtors Ben Moffatt, a/k/a Timothy B. Moffatt, and Sheila Moffatt, a/k/a/Sheila Reich, d/b/a Wilder Quarterhorse Ranch, will be dismissed ten days from the date of this order without further notice or hearing unless they convert the case to one under Chapter 13 of the Bankruptcy Code in the intervening period.

**SO ORDERED.**

Dated this May 3, 2005.

                              **WILLIAM A. HILL, JUDGE**
                              **U.S. BANKRUPTCY COURT**